IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KATHLEEN SCOTT,

        Plaintiff,                    No. CIV S-07-0563 JAM GGH

    vs.

MICHAEL J. ASTRUE,             <u>FINDINGS AND RECOMMENDATIONS</u>
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, the court recommends that plaintiff's Motion for Summary Judgment or Remand be denied, the Commissioner's Cross Motion for Summary Judgment be granted, and the Clerk be directed to enter judgment for the Commissioner.

<u>BACKGROUND</u>

        Plaintiff, born September 11, 1949, applied on October 6, 2003 for disability benefits. (Tr. at 123-26.) Plaintiff alleged she was unable to work since June 11, 2003, due to degenerative disc disease, fibromyalgia, trigger thumb in the right hand, depression, and anxiety. (Tr. at 123.)

\\\\\

On April 14, 2005, ALJ Antonio Acevedo-Torres found plaintiff not disabled. (Tr. at 88-99.) The Appeals Council remanded on October 20, 2005, because the ALJ had not attempted to secure significant records, did not evaluate a significant portion of the consultative examiner's opinion, and failed to obtain vocational testimony regarding plaintiff's mental limitations. (Tr. at 116-17.) On remand, the ALJ was to consider the current evidence, develop further evidence, provide rationale in support of assessed limitations, and obtain vocational expert evidence. (Id. at 117.) In a second decision dated June 16, 2006, ALJ Antonio Acevedo-Torres again determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through the date of the hearing.
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b)

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

and 404.1571 *et seq*.).

3. The claimant has the following severe impairments: fibromyalgia, mild degenerative disc disease of the lumbar spine, hypertension, depressive disorder and anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to stand, walk, and sit six hours in an eight hour day, lift and carry 50 pounds frequently and 100 pounds occasionally, with no more than mild to moderate limitations in dealing and interacting with the public, co-workers, and supervisors, and only mild limitations in complex job instructions and mild limitations in attention concentration and pace.

6. The claimant is capable of performing past relevant work as legal secretary-paralegal and substance abuse counselor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from June 11, 2003 through the date of this decision (20 CFR 404.1520(f)).

(Tr. at 18-29.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Give Proper Weight to Plaintiff's Treating Doctors; B. Whether the ALJ Ignored the Relevant Evidence of the Consultative Examiner; and C. Whether the ALJ Erred in Rejecting Lay Evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

   A. Whether the ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physicians

   Plaintiff claims that the ALJ erred in rejecting the treating opinions of Drs. Richey and Tomboulian.

   The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

\\\\\

---

   [2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. Likewise, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984). The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff objects to the ALJ's rejection of the findings of fibromyalgia by both Drs. Richey and Tomboulian on the basis that there was a dearth of objective findings, despite the ALJ's admission that these doctors found the requisite number of tender points for this diagnosis. Plaintiff claims that fibromyalgia requires 18 positive tender points which not only did these

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

physicians find, but that the consultative physician also found 18 tender points.

Plaintiff takes issue with the ALJ's rejection of the fibromyalgia diagnoses because this disorder is recognized by the Social Security Administration as a potential basis for disability, and examinations have indicated 18 trigger points which constitute the objective findings. Because fibromyalgia cases depend mostly on subjective symptoms, and no objective tests can verify the existence of the condition, fibromyalgia cases present difficult issues. Assessing it for a disability evaluation is difficult because the evaluation necessarily is dependent on subjective pain complaints. Over-exaggerated complaints of disabling pain are difficult to differentiate from bona fide claims. Accordingly, the court has devoted extra scrutiny to the record to determine whether the ALJ's decision is factually and legally supportable.

Fibromyalgia refers to "[a] group of common nonarticular disorders characterized by achy pain, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissue structures." The Merck Manual 481 (17th ed. 1999). Although cutting edge studies are in progress to establish physiological criteria, "The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity." Ward v. Apfel, 65 F. Supp. 2d 1208, 1213 (D.Kan.1999) (citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996)). "The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and ... multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch .... Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [the plaintiff] is one of the minority." Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir.1996) (citation omitted). See *Fibromyalgia Network*, *Diagnostic Criteria and Fibromyalgia Basics*, www.fmnetnews.com, National Fibromyalgia Assn., *About Fibromyalgia*,

www.fmaware.org. A claimant's accounts of pain, especially where the subjective symptoms are relevant to the medical diagnosis, must be carefully considered. Cf. Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir.1998) (discussing subjective complaints in context of diagnosis for chronic fatigue syndrome).

It is impossible to determine from the record whether plaintiff's fibromyalgia prevents plaintiff from doing her past work, mostly because many of the findings are based solely on her subjective complaints and because those complaints have been questioned by various medical sources. Nonetheless, the court is bound to rely on the ALJ's findings because his reasons for rejecting the opinions of Drs. Richey and Tomboulian are specific and legitimate and based on substantial evidence in the record.

The ALJ did find fibromyalgia to be a severe impairment, and he also acknowledged that various doctors including consultative examiners and Dr. Tomboulian, found positive trigger points for fibromyalgia. (Tr. at 20, 26.) He discounted these opinions, however, because the remainder of her exams were normal. (Id. at 26.)

First, the ALJ rejected the opinion of Dr. Richey because the clinical findings did not support the extreme limitation by this physician that plaintiff could not even do sedentary work. (Tr. at 27.) The ALJ opined that Dr. Richey appeared to accept as true all of plaintiff's subjective complaints.[4] The ALJ also pointed to plaintiff's MRI which indicated mild and minimal findings, as opposed to Dr. Richey's diagnosis of "severe" degenerative disc disease.[5] (Id. at 27, 274, 329.) The ALJ did not specifically discuss Dr. Richey's diagnosis of fibromyalgia, but more generally rejected this physician's opinion that plaintiff could not do sedentary work.

---

[4] Although credibility has not been raised as an issue by plaintiff, the ALJ suggested that she was exaggerating some symptoms due to the increase in positive Waddell's signs and Dr. Char's notation that plaintiff "did not appear to put forth full effort." (Id. at 26.)

[5] The report referred to by the ALJ actually diagnosed low back disease with spinal stenosis based on this MRI. (Tr. at 329.)


Dr. Richey completed a questionnaire regarding residual functional capacity based on fibromyalgia on May 1, 2004.  In addition to fibromyalgia, she also diagnosed low back disease with spinal stenosis, chronic dysthymia, chronic gastritis and right trigger thumb.  (Tr. at 329.)  She opined that plaintiff was unable to work due to secondary pain and sleep disorder.  (Tr. at 330.)  She thought plaintiff could sit for ten minutes at a time, stand for ten minutes at a time, and sit, stand and walk for a total of less than two hours a day.  (Id. at 331.)  Plaintiff would need to take unscheduled breaks for five to ten minutes every hour.  (Id.)  Plaintiff could lift less than ten pounds frequently, and ten to twenty pounds occasionally.  (Id. at 332.)  Dr. Richey stated that plaintiff was "absolutely not" a malingerer.  (Id. at 329.)

Dr. Tomboulian's opinion was also rejected by the ALJ who noted that although this physician found positive trigger points for fibromyalgia, the exam was otherwise normal.  (Tr. at 24.)  The ALJ discounted this opinion because the doctor prescribed only alternative medicines of fish oil, tumeric and cumin.  (Id. at 24, 26.)  Plaintiff's only pain medication until November, 2005 was Motrin.  At this time, Dr. Tomboulian added Flexeril and methadone.  This physician considered an MRI but never ordered one.  In regard to both Drs. Tomboulian and Richey, the ALJ wrote that their records "are replete with the claimant's complaints, symptoms, and attempts at obtaining disability, but lacking on clinical findings."  (Tr. at 27.)  In regard to Tomboulian's functional limitations, the ALJ stated that they were extreme and contrary to other evidence of record.

A review of the record indicates that Dr. Tomboulian also completed a fibromyalgia questionnaire like the one completed by Dr. Richey, but it was more recent, dated March 1, 2005.  His opinions were even more restrictive than Dr. Richey's.  He found that plaintiff could walk for one block without rest, could sit or stand for five minutes at a time, could sit, stand and walk for only five minutes at a time, that plaintiff's legs would have to be elevated fifty percent of the time, that plaintiff should rarely lift less than ten pounds, and that she could barely twist or stoop.  (Tr. at 357-60.)

It is interesting to note that on June 18, 2004, plaintiff reported to Dr. Richnak that she was managing her pain from fibromyalgia effectively, but that she did have difficulty sleeping. (Tr. at 396.)

Dr. O'Brien, a consultative internist upon whom the ALJ relied in part, saw plaintiff on two occasions. On February 26, 2004, she diagnosed fibromyalgia and noted, plaintiff "does have positive tenderness in 18 of 18 tender points, but reports tenderness in multiple control points as well." (Tr. at 294-95.) When Dr. O'Brien conducted another exam on November 17, 2005, she noted that plaintiff had only 9 out of 18 positive tender points. (Id. at 449.) At this time, Dr. O'Brien noted that plaintiff's symptoms as described were not consistent with fibromyalgia as it tends to affect muscles rather than joints, and plaintiff had described joint pain. (Id.) Dr. O'Brien also noted three positive Waddell's signs, as compared to one positive sign on the earlier exam.[6] (Id. at 448.)

The ALJ did not specifically discuss Dr. O'Brien's change in the fibromyalgia diagnosis, but he did note the additional positive Waddell's signs since the first visit, finding it indicative of amplification or exaggeration of symptoms. (Tr. at 26.) He also discussed Dr. O'Brien's assessments of plaintiff's functional capacity, noting that she found on both visits that plaintiff could stand, walk and sit for six hours in a work day, lift and carry 50 pounds frequently and 100 pounds occasionally, and that there were no postural or manipulative limitations, despite the fibromyalgia diagnosis at the earlier visit. (Tr. at 23, 24, 295-96, 449.) Other than some limitation of motion in her lumbar spine and elbows, the November, 2005 exam was mostly normal. (Id.)

The timing of these various diagnoses of fibromyalgia is important. Dr. O'Brien first diagnosed fibromyalgia in February, 2004. Dr. Richey's report was completed a couple of

---

[6] Waddell's signs are physical signs "that may indicate non-organic or psychological component to chronic low back pain. Historically they have been used to detect 'malingering' patients with back pain." en.wikipedia.org.

months later, in May, 2004. Dr. Tomboulian's report was dated March, 2005, some eight months prior to the most recent assessment of plaintiff's fibromyalgia by Dr. O'Brien, on November 17, 2005. Dr. Richey's evaluation occurred about a year and a half prior to Dr. O'Brien's second evaluation. Although not discussed by the ALJ, it is possible that these earlier reports may indicate that plaintiff's fibromyalgia was previously worse, but that it had improved by the time of Dr. O'Brien's second evaluation wherein only 9 of 18 trigger points were established. Therefore, the treating physician reports are not necessarily inconsistent with Dr. O'Brien's latest report because they may show an improvement in plaintiff's condition over time.

      The ALJ also questioned plaintiff's credibility throughout his opinion, despite the fact that he did not make an enumerated finding specifically rejecting it. Although plaintiff has not raised it as an issue in her motion, it is important to address as fibromyalgia relies so heavily on a patient's subjective complaints. First, the ALJ noted that although plaintiff had received multiple steroid injections for her back, after the last injection she was told to return in six months for additional injections, but she did not. (Tr. at 26.) When Dr. Richnak saw her for hip pain, he referred her to physical therapy but there is no indication that she followed through on these instructions. (Id.) Although plaintiff has alleged panic attacks, anxiety and depression, there is no documentation of any panic attacks, she has not received mental health treatment, and she stated that she does not want to attend the type of counseling "that she can afford." (Id.) Despite plaintiff's allegations of extreme limitations in sitting, standing, walking and lifting, the clinical findings are limited to muscle tenderness, and not atrophy, weakness, anatomically consistent sensation changes, or reflex changes. There were also the positive Waddell's signs mentioned above, and Dr. Char's notation that plaintiff did not appear to put forth full effort for his exam. In fact, Dr. Char noted that plaintiff's standing and walking limitations were provided by her, and were not his own opinion. He found "no significant limitations other than poor tolerance due to her conditioning. (Id. at 28.) Dr. Tomboulian also noted that plaintiff was working 15 hours a week as of August, 2005. (Id. at 26.) The ALJ noted that his records and

those of Dr. Richey were replete with attempts at obtaining disability, but containing almost no clinical findings. The ALJ's opinion leaves the definite implication that plaintiff is not credible, and plaintiff has not challenged this finding. The ALJ further rejected Dr. Tomboulian's finding of total disability as an issue reserved to the Commissioner. (Id. at 28.)

In addition to the ALJ's specific reasons for rejecting the opinions of Drs. Richey and Tomboulian on the issue of fibromyalgia, some weight should be placed on the fact that Dr. O'Brien is board certified for internal medicine whereas the two treating physicians were general practitioners or family doctors, with less training.

Based on the ALJ's aforementioned credibility findings which have not been challenged, as well as the fact that plaintiff was working three consecutive days a week for five hours a day as of August 30, 2005, (tr. at 430, 443), and the inherent problem with verifying a claim of fibromyalgia, the court finds that the ALJ's reasons to reject Drs. Richey and Tomboulian's opinions are specific and legitimate and supported by substantial evidence in the record.

B. Consultative Examiner

Plaintiff next claims that the ALJ erred in ignoring Dr. Char's assessment of her functional limitations, and his opinion that plaintiff had "chronic defused body pain, r/o fibromyalgia." (Tr. at 458, 461.)

> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. .... And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996).

\\\\\

1   Dr. Char opined that plaintiff could occasionally lift 20 pounds, frequently lift ten
2   pounds, stand and walk at least two hours in an eight hour day, sit less than six hours, with
3   standing and sitting for only 20 minutes continuously, along with postural and manipulative
4   limitations. (Id. at 459, 461-62.) Dr. Char specifically noted that the 20 minute limitation on
5   standing and sitting was "according patients statement." (Id. at 459.)
6   The ALJ rejected this opinion because it contradicted the clinical findings of
7   record and Dr. Char's own findings during the exam. Dr. Char reported that the exam was
8   generally within normal limits, and when it was not, it was because plaintiff exerted little effort
9   in strength and range of motion testing. (Id. at 28, 456-57.) The ALJ noted the aforementioned
10  reference by this doctor that the 20 minute limitation was based on plaintiff's statement. (Id. at
11  28.) Additionally, the ALJ referred to Dr. Char's notation "that he could find 'no significant
12  limitations' other than poor tolerance due to her conditioning." (Tr. at 28, 458.)
13  The ALJ's reasons to reject this doctor's opinion are evident in the report itself,
14  where the physician intimates that his assessment is not accurate based on plaintiff's poor effort
15  and low tolerance. It is apparent from the report that Dr. Char is not convinced of his own
16  assessment by way of these notations. Furthermore, Dr. Char did not have sufficient information
17  to make an actual diagnosis of fibromyalgia as the other physicians did. The ALJ's reasons to
18  reject this physician's report are specific and legitimate.
19        C. Whether the ALJ Failed to Credit the Opinion of Lay Witness Ellis
20  Plaintiff asserts that the ALJ did not properly consider the opinion of Kathy Ellis,
21  a licensed marital and family therapist, as well as plaintiff's past employer.
22  An ALJ is required to "consider observations by non-medical sources as to how
23  an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232
24  (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ
25  must take into account, unless he or she expressly determines to disregard such testimony and
26  gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001) (citing <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)).  Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Ninth Circuit has held that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination.  <u>Stout v. Commissioner</u>, 454 F.3d 1050 (9th Cir. 2006).  This standard is extremely high and rivals, if not surpasses, the <u>Chapman</u> harmless error standard in criminal law (error harmless only if no reasonable doubt about its lack of effect).

The ALJ here rejected this therapist's opinion because she never treated or diagnosed plaintiff.  She only observed plaintiff as a volunteer in her office, and when plaintiff's grandson, who was her patient, came into the office for appointments and plaintiff accompanied him. (Tr. at 27.)  Nevertheless, this therapist completed a mental assessment form and wrote a letter concerning plaintiff to the Department of Social Services.  (Tr. at 361-62, 434-35.)

Ms. Ellis admitted in her mental assessment questionnaire that she did not diagnose plaintiff as she was not a patient, but that plaintiff's grandson was her client; however, she based her opinion on working with plaintiff for over two years.  Her opinion was that plaintiff had panic attacks, anxiety and major depression.  Ms. Ellis has assessed plaintiff's functional capacity and opined that she could only sit or stand for a few minutes and therefore had marked limitations in this area.  She found moderate limitations in social functioning and moderate or marked limitations in concentration, persistence and pace due to pain.  (Tr. at 361.)  She thought plaintiff had marked limitations in being able to adapt to work place settings.  (<u>Id.</u> at 362.)  In her letter to Social Services, Ms. Ellis opined that although plaintiff worked at her office 12 to 15 hours per week, she had difficulties working this many hours due to tiredness, pain and

feeling overwhelmed.  She has had to miss work due to her health.  (Id. at 434.)  Ms. Ellis thought that plaintiff was hard working and was not trying to abuse the disability system.  (Id. at 435.)

        The ALJ properly discussed the testimony of Ms. Ellis as a lay witness, and properly discredited her as a medical source.  In fact, as defendant points out, it is somewhat misleading to provide a purported medical opinion through a mental assessment questionnaire despite the lack of any professional diagnosis or treatment.

CONCLUSION

        Accordingly, IT IS HEREBY RECOMMENDED that: Plaintiff's Motion for Summary Judgment or Remand be denied, the Commissioner's Cross Motion for Summary Judgment be granted, and the Clerk of Court be directed to enter judgment for the Commissioner.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 07/22/08

        /s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Scott563.ss.wpd